IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| **Emerald Equipment Leasing, Inc.**, | * | |
| *Plaintiff,* | * | |
| v. | * | Case No. 1:09-cv-02808-BEL |
| **Sea Star Line, LLC,** | * | |
| and | * | |
| **Master or Custodian of M/V EL FARO,** | * | |
| *Defendants,* | * | |
| and | * | |
| **ABF Freight System, Inc.,** *et alia,* | * | |
| *Garnishees.* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE WRITS OF MARITIME ATTACHMENT AND GARNISHMENT

Defendant Sea Star Lines, LLC ("Sea Star") submits this Memorandum of Law in Support of its Motion to Vacate the Maritime Writs of Attachment and Garnishment issued by the Court at the instance of Plaintiff Emerald Equipment Leasing, Inc. ("Emerald"). The writs should be vacated and this action dismissed, because the issues have already been litigated in Sea Star's favor five months ago in the U.S. District Court for the Southern District of New York, and because the writs are improper under maritime law. Emerald is precluded by the doctrine of collateral estoppel from seeking relief against Sea Star under Rule B.

### BACKGROUND

The facts underlying this matter are largely established by admissions in pleadings that Emerald has filed in four other proceedings involving Sea Star and Emerald. On March 21, 2001,

plaintiff Emerald (a Delaware[1] corporation) filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court") along with several affiliated entities, including NPR, Inc and Holt Cargo Systems, Inc. (collectively "NPR"). Emerald claims to have been operating and conducting its business as a Debtor-In-Possession under Chapter 11 of the Bankruptcy Code since that time. Declaration of Barbara L. Holland in Support of Motion to Vacate ("Holland Dec.") Exh. A at 1-2, 25.

Prior to March 21, 2001, Emerald leased all of its equipment to NPR. *Id.,* Exh. A at 4 & 26 ¶ 6. In April 2002, Sea Star purchased a number of assets from NPR's bankruptcy estate. *Id.,* Exh. A at 26 ¶ 7. After negotiations with Emerald and its secured lender, Sea Star entered into an Equipment Rental Agreement with Emerald (the "Equipment Rental Agreement") dated July 31, 2002. *Id.,* Exh. A at 32-42. The Equipment Rental Agreement is a maritime contract, as it pertained to equipment used in connection with the carriage of cargo aboard vessels in maritime commerce.

On October 31, 2003, Emerald terminated the Equipment Rental Agreement. *Id.,* Exh. A. at 5. The parties had various disputes regarding their rights and duties to each other. To resolve those disputes, Sea Star filed a declaratory judgment action against Emerald in the United States District Court for the Middle District of Florida under Cause No. 3:04 CV-146-J-99HTS (the "Florida Action") on March 1, 2004. *Id.* On March 17, 2004, Emerald filed an adversary proceeding (the "First Delaware Action") in the Delaware Bankruptcy Court against Sea Star, seeking resolution of the same claims that gave rise to the Florida Action. *Id.,* Exh. A, at 2. Sea Star moved to dismiss the First Delaware Action based on the pendency of the first-filed Florida Action, and the First

---

[1] Emerald alleged in its Verified Complaint that it is a New Jersey corporation. That allegation (verified by Emerald's counsel) is incorrect. Emerald is incorporated in Delaware and has both alleged and admitted that fact repeatedly in other litigation. *See, e.g.,* Holland Dec., Exh. F (Emerald's New York complaint); *id.*, Exh. D (Emerald's Answer and Counterclaims in the Florida action).

Delaware Action was dismissed by the Delaware Bankruptcy Court on May 28, 2004. Holland Dec., Exh. B.

On April 28, 2004, Emerald filed a motion in the Florida Action, seeking dismissal, or to transfer it to the United States District Court for the District of Delaware ("Delaware District Court"). Holland Dec., Exh. A. at 1-21. Emerald argued that the Delaware District Court was a more convenient venue because Emerald's bankruptcy was pending in the Delaware Bankruptcy Court. *Id.,* Exh. A at 15. Emerald also argued that the Delaware District Court would provide a more efficient venue for resolution of the issues between the parties since the issues between the parties involved the bankruptcy proceeding. *Id.,* Exh. A at 17.

On April 20, 2005, Judge Henry Lee Adams of the Middle District of Florida issued an Order granting Emerald's motion to transfer. Holland Dec., Exh. C. Considering the factors required for transfer under 28 U.S.C. § 1404(a), Judge Adams first concluded that the action could have been brought in the Delaware District Court. *Id.,* Exh. C at 2-3. Judge Adams then noted that the "ongoing bankruptcy litigation would make Delaware a more convenient forum for Emerald's witnesses," and that "Sea Star's Complaint references proceedings that took place in the Delaware Bankruptcy Court." *Id*., Exh. C at 3-4. Judge Adams concluded that "Delaware offers the most appropriate forum for efficient use of judicial resources," and he transferred the Florida Action to the Delaware District Court. *Id*., Exh. C at 5. That proceeding (hereafter the "Second Delaware Action") has been pending before the Honorable Joseph J. Farnan, Jr. under Cause No. 1:05-cv-00245-JJF-LPS in the Delaware District Court since April 27, 2005. Emerald filed counterclaims in the Second Delaware Action against Sea Star on April 21, 2005. Holland Dec., Exh. D. In the 4+ years since then, the parties have conducted substantial discovery and motion practice and have tried several issues to the Court.

Ten months ago, Emerald filed a lawsuit under Rule B against Sea Star. Holland Dec., Exh. E. That Rule B action was filed in the Southern District of New York (the "New York Action") on December 9, 2008 under Cause No. 08 CIV 10672 (JGK), and was assigned to the Honorable John G. Koeltl. The New York Action was based on the facts and allegations giving rise to the Second Delaware Action, and also the same facts giving rise to this matter (hereafter the "Maryland Action"). Judge Koeltl did not issue writs of garnishment under Rule B to Emerald on Emerald's *ex parte* application. Instead, after Sea Star appeared, the parties briefed the issue of whether or not Emerald was entitled to relief under Rule B. After oral argument, Judge Koeltl issued an order dated May 1, 2009, denying Emerald's right to relief under Rule B on several grounds. *Id.*, Exh. F. Judge Koeltl then dismissed the New York Action. *Id.* Emerald did not file any appeal.

In the Second Delaware action, the parties continue to litigate the merits and are in the process of briefing the issue of whether final judgment is proper at this juncture. After a trial, Judge Farnan issued a Memorandum Order ruling in Emerald's favor on several of its counterclaims on August 27, 2009. Holland Dec., Exh. G. On September 4, 2009, Emerald submitted a proposed "Final Judgment Order" to Judge Farnan. Holland Dec., Exh. H. Before any response to Emerald's proposed order was due, Sea Star filed a Notice of Appeal pursuant to 28 U.S.C. § 1292(a)(3) (which allows appeals of interlocutory orders in admiralty matters). Holland Dec., Exh. I. On September 24, 2009, Judge Farnan entered the "Final Judgment Order" attached as Exhibit B to plaintiff's complaint here in the Maryland Action. On September 29, 2009, Sea Star filed a Motion to Vacate Final Judgment Order. Holland Dec., Exh. J. On October 2, 2009, the Court issued an Order that "the Clerk's Office shall hold in abeyance the directive to release funds contained in Paragraph 6 of the Judgment Order (D.I. 294) until further Order of the Court." Holland Dec., Exh. K. On October 16, 2009, Emerald filed a Response to Sea Star Line, LLC's Motion to Vacate Final Judgment

Order. Holland Dec., Exh. L. Emerald also filed a proposed Writ of Execution. On October 22, 2009, the Court issued an Order "requir[ing] the parties to submit their respective positions on the appropriateness of the filing of the Writ [of Execution]". Holland Dec., Exh. M. On October 23, 2009, Sea Star filed a Reply in Support of its Motion to Vacate Final Judgment Order. Holland Dec., Exh. N. Sea Star's briefing in response to the Court's order of October 22, 2009 is due on October 29, 2009, and Emerald's response is due on November 3, 2009. Holland Dec., Exh. M. The primary issue is whether final judgment can be entered when the Court has not yet ruled on Sea Star's counterclaims.

This lawsuit, the Maryland Action, was initiated by Emerald on October 23, 2009, the day after Judge Farnan ruled that the parties were required to brief the execution issues in Delaware. On the day of filing, Emerald sought and obtained an *ex parte* order granting Rule B writs of attachment and garnishment to several dozen entities, and a Rule B warrant of arrest of a vessel owned by Sea Star, the M/V EL FARO. In its *ex parte* motion for Rule B attachment, Emerald: (a) misrepresented its state of incorporation; (b) incorrectly advised this Court that a "judgment" had been entered in the Second Delaware Action, without informing the Court that the issue of the finality of the "judgment" was then being briefed and considered by Judge Farnan; and (c) failed to inform this Court of Judge Koeltl's ruling in the New York Action, which conclusively determined that Emerald was not entitled to any relief under Rule B. These misstatements and omissions are important to this Court's rulings in this case.

## LEGAL ARGUMENT

**I.      Summary of Argument.**

This matter should be dismissed because the issues raised in it have already been finally and conclusively determined in the New York Action. Judge Koeltl has already ruled, on exactly the

same facts as are presented here, that Emerald is not entitled to any relief under Rule B as to claims arising under the Equipment Rental Agreement. Emerald is bound by that ruling and collaterally estopped from litigating it for a second time in this Court.

The Rule B attachments should also be vacated under the principles set forth in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006) ("*Aqua Stoli*"). Under *Aqua Stoli*, maritime attachments do not serve the purposes of Rule B and should be vacated when the Rule B defendant is amenable to jurisdiction in a convenient adjacent jurisdiction, or when both the Rule B plaintiff and defendant are present in the same jurisdiction. Both situations exist here. Vacatur is automatically granted when the *Aqua Stoli* factors are met, and failure to vacate an attachment would be an abuse of discretion. Accordingly, this Court should vacate the writs of attachment and dismiss this action.

## II.    Emerald is Precluded by the Doctrine of Collateral Estoppel from Seeking Relief Against Sea Star Under Rule B.

The doctrine of collateral estoppel or "issue preclusion, is a subset of *res judicata*." *In Re Microsoft Corporation Antitrust Litigation,* 355 F.3d 322, 326 (4th Cir. 2004). Applying collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *Id.*, quoting *Sedlack v. Braswell Servs. Group*, *Inc.*, 134 F.3d 219, 224 (4th Cir.1998).

To apply collateral estoppel or issue preclusion in the Fourth Circuit, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to

litigate the issue or fact in the prior proceeding. *Sedlack*, 134 F.3d at 224 (4th Cir.1998)*; Tuttle v. Arlington County Sch. Bd.*, 195 F.3d 698, 703-04 n. 6 (4th Cir.1999); *Polk v. Montgomery County, Maryland*, 782 F.2d 1196, 1201 (4th Cir.1986); *C.B. Marchant Co. v. Eastern Foods, Inc.*, 756 F.2d 317, 319 (4th Cir.1985).

The test for deciding whether the causes of action are identical for claim preclusion purposes is "whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.' " *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir.1999) (*quoting Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir.1986)). A fact or issue is "critical and necessary to the judgment" if it is essential - more than merely supportive of or relevant - to the judgment. *In re Microsoft*, 355 F.3d at 327. A ruling is not "final and valid" for the purposes of collateral estoppel if it is interlocutory and subject to revision. *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Construction Industries*, 582 F. Supp. 1136, 1146 (D. Md. 1984); *see also Polk*, 782 F.2d at 1201). The full-and-fair-opportunity formulation, as an element of collateral estoppel, generally requires that a litigant receive reasonable notice of the claim against him and opportunity to be heard in opposition to that claim. *Holland v. Kohn*, 12 Fed.Appx. 160 (4th Cir. 2001) citing *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir.1982) (quoting 1B Moore's Federal Practice ¶ 0.411 at 1252 (2d ed. 1982)).

This Court should apply the same standard as it applied in *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Construction Industries*, 582 F. Supp. 1136, 1146 (D. Md. 1984). In that case, as here, the Court was presented with a motion to vacate attachment of a vessel pursuant to the court's admiralty jurisdiction. One of the questions to be determined was whether the contract underlying the dispute was a "maritime contract" under Rule B. After the hearing, but before the ruling, the court was notified by the parties that the district court for the Southern District of New

York had recently made a ruling on the very issue of whether the contract was a "maritime contract" under Rule B. The prevailing party in the New York ruling requested this Court to apply *res judicata* and refuse to allow the parties to relitigate the issue.

In *Outbound*, the court noted that both the New York and Maryland actions involved the identical claims, parties, contract and alleged breach. *Id*. ("The matter before the New York court is a claim identical to the one *sub judice* . . . It involved the same parties, the same oral contract, the same alleged breach and the same prayer for relief.") Similarly, the parties and claims in Emerald's complaint in this action are identical to those in the New York action. Unlike this case, however, there was one element of collateral estoppel lacking in the *Outbound* case: the *Outbound* Court found that the doctrine did not apply because the New York ruling was not sufficiently "final." Specifically, the Court stated that the New York ruling was "interlocutory and subject to revision. . . The opinion itself indicates the mutability of the decision ('. . . I find that defendants' motion to vacate the attachment *at this time* must be denied.') (emphasis supplied)." *Id*.

Here, in contrast with *Outbound*, every element of collateral estoppel is satisfied, especially the requirement that the previous litigation was final. In the New York Memorandum Opinion and Order, Judge Koeltl stated:

> For all of the foregoing reasons, the petitioner's application for a Rule B attachment is **denied**. Because absent an attachment there is no further basis for this lawsuit, this case is **dismissed**. The Clerk is directed to enter Judgment and to close this case on the docket. (emphasis original)  Holland Dec., Exhibit G at 16-17.

Clearly, Judge Koeltl's Order foreclosed any further decision on this issue and represents a final decision, thus precluding the relitgation of the availability of Rule B by this Court.

The facts and issues in the motion before this Court are identical to those previously litigated by the same parties in New York; the prior proceeding actually resolved the issues, which were critical and necessary to its judgment; the New York judgment was final and valid; and Emerald had

a full and fair opportunity to litigate the issues and facts in the prior proceeding. Moreover, by attempting to relitigate an issue already decided by another federal district court, Emerald is wasting valuable judicial resources in this Court and should not be rewarded for doing so. *See Outbound*, 582 F. Supp. at 1146.

### III.    Rule B Attachment is an Equitable Remedy Which Must be Applied and Limited According to Its Underlying Purposes.

In *Aqua Stoli,* the Second Circuit Court of Appeals addressed the standards to be applied to a motion to vacate a Rule B attachment under Supplemental Rule E(4). *Aqua Stoli*, 460 F.3d 434. The Court first looked at the purposes to be served by the remedy of prejudgment attachment of assets in maritime cases:

> The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. U.S. Const. art. III, § 2. The power's historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).

*Aqua Stoli*, 460 F.3d at 437-38. The Court then set forth the following standards for vacating a Rule B attachment:

> [A] district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Aqua Stoli*, 460 F.3d at 445.

While *Aqua Stoli* is a Second Circuit decision, it should be followed by this Court because it effectuates the dual purposes of Rule B, namely acquiring jurisdiction over an absent defendant **and** obtaining security. Accordingly, the first two *Aqua Stoli* exceptions establish that Rule B attachment

is inappropriate if the Rule B defendant can be conveniently sued *in personam* in another U.S. court by the Rule B plaintiff. This effectuates the first requirement of the power's "historical purpose," which is to gain jurisdiction over an absent defendant. The third *Aqua Stoli* exception – vacating attachment when the plaintiff is adequately secured – makes sure any attachment effectuates the second purpose of the remedy. A Rule B attachment is improper unless it accomplishes **both** purposes underlying the Rule.

Emerald has the burden of proving that it has met the requirements of Rule B. Moreover, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 52 (2d Cir. 2008), *cert. denied,* 77 U.S.L.W. 3369 (2009). Instead, "[w]here a defendant contests an attachment of its property under Rule E(4)(f), plaintiffs must demonstrate at the Rule E hearing why the attachment should not be vacated." *Id.* Application of these rules leads to the conclusion that the attachment in this action was improper and inequitable and should be set aside.

### IV.   Rule B Attachment Is Inappropriate and Inequitable Here Because Sea Star is Amenable to Jurisdiction in a Convenient or Adjacent Jurisdiction.

The first *Aqua Stoli* exception provides that attachment should be vacated when the Rule B defendant is subject to suit in a "convenient adjacent jurisdiction." *Aqua Stoli*, 460 F.3d at 445. The *Aqua Stoli* court described the issue as one involving the "convenience" to the plaintiff of pursuing the defendant *in personam* in a jurisdiction that was not geographically "remote." *Id.* at 444. The court noted, for example, that when a defendant could be sued "across the river" in the Eastern District of New York but attachment had been obtained in the Southern District of New York, it was "a paradigmatic example of a case where an attachment should be vacated." *Id.*

Judge Koeltl has already ruled against Emerald on this issue in the New York Action, holding that "it is plain that New Jersey is sufficiently close to this forum to constitute a convenient

adjacent jurisdiction under *Aqua Stoli*, should the defendant be subject to suit there." Holland Dec., Exh. G at 5 (New York Order). Judge Koeltl noted that Emerald offered "no argument or explanation with respect to why the District of New Jersey would be inconvenient in this case in terms of geographical location." *Id.* Exh. G at 6. Thus, Emerald had the right to sue Sea Star in New Jersey if it chose to do so, since Sea Star was subject to jurisdiction there, and could not avail itself of the special procedures afforded by Rule B. By suing under Rule B in New York, Emerald admitted that litigating in that District was convenient, and therefore that litigating in New Jersey would also be proper. The same ruling should apply here, given that Sea Star is amenable to suit in both New Jersey and Delaware, both of which are indisputably convenient for Emerald. *See, e.g., Ivan Visin Shipping v. Onego Shipping & Chartering*, 2008 WL 839714, 2008 A.M.C. 1760, *reconsideration denied*, 543 F.Supp.2d 338 (S.D.N.Y. 2008) (presence of defendant in New Jersey required vacating attachment in Southern District of New York); *Swiss Marine Services S.A. v. Louis Dreyfus Energy Services L.P.*, 598 F.Supp.2d 414 (S.D.N.Y. 2008) (same as to Rule B defendant present in Connecticut).

In determining if a defendant is "present" in a convenient adjoining jurisdiction, the Court employs the same two-part test used to determine if the defendant is "present" in the District where the suit is filed. First, the Court determines if the defendant is subject to *in personam* jurisdiction in the relevant jurisdiction, applying the traditional due process rule – whether the defendant maintains sufficient contacts with the forum state so that a finding of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Swiss Marine,* 598 F.Supp.2d at 419, citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Second, the Court must establish that there is a person in the District at issue who is amenable to service of process under Fed.R.Civ.P. 4. *Id.*

Sea Star's materials show, and Judge Koeltl has ruled, that Sea Star is "present" in New Jersey under both elements. Sea Star has maintained a continuous and substantial business presence in New Jersey for over 6 years. Holland Dec., Exh. G (New York Order). Sea Star maintains a regular office in that State; it has employees there; it generates substantial revenue in the State; it pays taxes; and it has done so for years. *Id.* The company assists customers who load vessels in New Jersey and deals with truckers, terminal operators, and vessel operators daily, all in connection with loading over 100 items of cargo per week. *Id.* These facts are very similar to those which supported jurisdiction in *Green v. Compania De Navigacion Issabella, Ltd.*, 26 F.R.D. 616 (S.D.N.Y. 1960). Sea Star has a "continuous and systematic course of business" in New Jersey, making Sea Star subject to jurisdiction there.

Sea Star also has agents in New Jersey who can be served with process. Fed.R.Civ.P. 4(h)(1)(B) allows process service on a corporate defendant to be effected by delivery of the summons and complaint to, inter alia, "a managing or general agent." Such a person must be one of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors. S*ee generally* Wright and Miller, *Federal Practice and Procedure: Civil 3d* § 1103. The undisputed evidence is that Sea Star's terminal manager, Shawn Burke, resides in New Jersey, works at Sea Star's New Jersey office, and constitutes a "managing or general agent" within the meaning of Rule 4.

Sea Star is also present in Delaware, which is adjacent to this District. Sea Star is a Delaware corporation and thus is, by definition, subject to the personal jurisdiction of that State's (and the District of Delaware's) courts. Sea Star maintains an agent for service of process in Delaware. As Delaware is contiguous to this District, Emerald cannot credibly complain about litigating there. In fact, Emerald already has brought suit against Sea Star in Delaware by asserting and prosecuting

counterclaims against Sea Star in the Second Delaware Action, which is still pending. Emerald's filing of this Rule B action in the district "next door" constitutes blatant forum-shopping and should not be allowed.

**V.      Rule B attachment is Inappropriate and Inequitable Here Because Sea Star is Both Subject to Jurisdiction and In Fact Already Litigating in a U.S. Jurisdiction in Which the Plaintiff is Also Present.**

Even if one ignores Sea Star's New Jersey and Delaware presence, *Aqua Stoli* sets out a second, entirely independent basis for vacating an attachment. Attachment is improper when both the Rule B plaintiff and the Rule B defendant are "present" in the same jurisdiction. *Aqua Stoli* at 444-45 ("A maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets"). Again, the basis of this rule is to prevent a claimant from using Rule B when the claimant can easily gain *in personam* jurisdiction over a putative Rule B defendant in a forum where the claimant *is already located.* In that instance, convenience of the forum for the Rule B plaintiff can be presumed, and the defendant's presence provides all the assurance the plaintiff can expect regarding the defendant's answerability to a judgment.

The Second Circuit re-affirmed this principle last week in *ProShipLine, Inc. v. Aspen Infrastructure,* ___ F.3d ___, Slip Op., No. 08-0838-cv (2d Cir. Oct. 22, 2009). In that matter, plaintiff and Rule B claimant ProShipLine was involved in a breach of contract dispute with Aspen, and had obtained a Rule B writ of attachment in the U.S. District Court for the Southern District of New York. ProShipLine and Aspen were at the same time litigating the merits of their dispute in a lawsuit in the U.S. District Court for the Southern District of Texas. *Id.* The trial court ruled that

ProShipLine's attachment should be vacated due to the presence of both parties in Texas, and the Second Circuit affirmed. *Id.*

The inquiry in this matter is identical. Both Emerald and Sea Star are incorporated in Delaware, and thus are present in that District as a matter of law. Both companies maintain registered agents in Delaware for service of process, as required by Delaware law. And most fundamentally, the parties are in fact engaged in litigation on the merits in that jurisdiction. Judge Koeltl ruled as a matter of law in the New York Action that the Second Delaware Action precludes Rule B attachment by Emerald:

> There can be no disputing that the parties in this case are both present in the same district and subject to jurisdiction there, because both parties are incorporated in Delaware and are currently involved in litigation that is ongoing in that district. Indeed, the plaintiff concedes that "Sea Star may be said to 'reside' in Delaware.'" (Pl.'s Feb. 19, 2009 Letter Br. 4.) The plaintiff could thus obtain a personal judgment against the defendant in Delaware if such a judgment were warranted, and pursue judgment execution remedies against the defendant.

Holland Dec., Exh. G at 13 (New York Order). As Judge Koeltl ruled, "the plaintiff may not obtain an attachment in this District purely for the purpose of securing its claim in Delaware." *Id.*

Given its prior loss in New York, Sea Star is left to wonder why Emerald initiated this litigation at all. Sea Star believes that Emerald filed this action to avoid the limitations on pre-judgment attachment under Delaware state law. But Emerald has no grounds to complain about its purported inability to obtain pre-judgment security under Fed.R.Civ.P. 64, which results from Emerald requesting that the Florida Action be transferred to the District of Delaware. Having sought and obtained venue for this matter in Delaware, which Emerald portrayed as the most "convenient" and "effective" forum for the parties' dispute, Emerald cannot now "end-run" the limits of Delaware state law.

Nor can Emerald argue, as it did in the New York action, that its "need" to obtain security allows the Court to ignore the jurisdictional aspects of Rule B. That notion was specifically rejected by the Second Circuit Court of Appeals long ago:

> An attachment under Rule 2 of the Admiralty Rules, customarily referred to as a foreign attachment, has a dual purpose: (1) to obtain jurisdiction of the respondent in personam through his property, and (2) to assure satisfaction of any decree in libelant's favor. 2 Benedict, Admiralty § 288 (6th ed. 1940); *Swift & Company Packers v. Compaina Columbiana Del Caribe, S.A.*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). **The two purposes may not be separated, however, for security cannot be obtained except as an adjunct to obtaining jurisdiction.**

*Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963) (emphasis added).

## VI. The Court Should Dismiss This Action Because There is No Basis for Jurisdiction Over Sea Star.

The issues in this Rule B case have been conclusively litigated once before, and there is no reason to litigate them again. Given the pendency of the Second Delaware Action between these parties and Sea Star's amenability to personal jurisdiction there, Emerald cannot assert a basis for a Rule B attachment in Maryland. Such an attachment provides the only alleged basis for jurisdiction over Sea Star in this action; indeed, by filing the request for a Rule B attachment, Emerald necessarily took the position that this Court could not obtain personal jurisdiction over Sea Star. This matter therefore should be dismissed in its entirety.

Sea Star respectfully requests that this Court grant its Motion to Vacate and instruct Emerald to take affirmative steps to inform all garnishees who have been served that the Writs have been vacated.

Dated this 28th day of October.

Respectfully submitted,

GARVEY SCHUBERT BARER

By:   /s/  Benjamin J. Lambiotte, Esq.
Benjamin J. Lambiotte, Esq.
No. 12997
1000 Potomac Street, N.W.,
Fifth Floor
Washington, D.C. 20007
Telephone: (202) 965-7880
Facsimile: (202) 965-1729
blambiotte@gsblaw.com

and

By:   /s/ Barbara L. Holland, Esq.
Barbara L. Holland, Esq.
*Admission Pro Hac Vice Pending*
Second & Seneca Building
1191 Second Avenue, 18TH Floor
Seattle, Washington 98101-2939
Telephone: (206) 816-1307
Facsimile: (206) 464-0125
bholland@gsblaw.com

Counsel for Sea Star Line, LLC

SEA_DOCS:941023.1