IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| Emerald Equipment Leasing, Inc., | * | |
| Plaintiff, | * | |
| | | Civil Action No. . BEL 09-2808 |
| v. | * | |
| Sea Star Line, LLC, | * | |
| Defendant, | * | |
| and | * | |
| The Master or Custodian of the M/V EL FARO, *et al*, | * | |
| | * | |
| Garnishees. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

### EMERALD'S RESPONSE OPPOSING SEA STAR'S (NON)- "EMERGENCY" MOTION FOR EXTENSION OF GARNISHEES' TIME TO ANSWER RULE B MARITIME ATTACHMENT AND GARNISHMENT WRITS

This Court now should deny Sea Star's non-"emergency" motion.

First, Emerald suggests, that the Sea Star side should stop and take a breath.

There is no "emergency." As Emerald had explained to Sea Star, Emerald served the garnishees with the 20 day response writs, on October 26th. The first weekday, 20 days past October 26th, is Monday, November 16th. The Court has set the further Supplemental Rule E hearing, which Sea Star requested, for Thursday, November 12th. No answer or response to the writs served is even due, until four (4) days after the November 12th hearing.

Among the astounding and disappointing things about the motion, is that it overlooks (but nevertheless attaches, Exhibit A to the motion) the good faith exchange this very morning

between Emerald (Mr. Simms) and Sea Star (Ms. Holland) counsel.  After this, and after the parties' November 2nd conference with the Court taking up this very subject, why does Sea Star arrogate the Court's attention?

Mr. Simms this morning responds, that any garnishees needing extensions to answer (eg, after November 16th - four days after the scheduled hearing on November 12th, should just contact him (none have):

> Barbara, Thanks, any garnishees needing extensions of time to respond, should just email/phone us directly and for Emerald we can address that with them.

That is of course more than a reasonable response - since - Sea Star (and its counsel) represent **none** of these third party garnishees.  Why should Sea Star be permitted to take up the cause for extensions for third parties (eg, Fed. R. Civ. P 17(a)(1), "An action must be prosecuted in the name of the real party in interest") - especially - where **no** garnishee raises **any** objections to answering the writs?

This Court's intervention is entirely unnecessary; it is not properly an "emergency" motion.[1]  Sea Star nevertheless arrogates for this Court's immediate attention, again, suggesting

---

[1]   Neither this Court's Local Rules nor CM/ECF procedures define what properly is an "emergency motion," but this isn't one. *See, e.g.*, *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964)(Stewart, J., Concurring)("I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the ["emergency"] motion [ ] involved in this case is not that."). Mirriam-Webster ( http://www.merriam-webster.com/dictionary/emergency) defines "emergency" as:

> 1 : an unforeseen combination of circumstances or the resulting state that calls for immediate action
>
> 2 : an urgent need for assistance or relief <the governor declared a state of emergency after the flood>

(continued...)

that its apparent "embarrassment" from having a $6+ million judgment entered against it, entitles it to have this Court drop everything to deal with Sea Star's "emergency."

In fact, during the status conference yesterday (Tuesday, November 2nd), counsel and the Court discussed the garnishees' answers and the timing of the answers. Sea Star asked the Court, if the garnishees' answers could be postponed. This Court responded, that the garnishees would answer in the normal course. This Court yesterday covered and gave directions on the exact ground Sea Star now demands immediate attention for, again. It is unfortunate that Sea Star now ignores this direction from the Court, stridently demanding this Court's "emergency" attention on something this Court already has addressed.

Sea Star may be embarrassed by having a $6 million plus judgment[2] entered against it on the public record of a United States District Court, but that is no reason for this Court to treat

---

[1](...continued)
It can hardly be "unforseen" that once a party - as Emerald does here - obtains a $6+ million judgment after years of hammer and tongs litigation - and a U.S. District Court finds that a defendant (Sea Star) egregiously has breached its obligation to pay for equipment that it has used, that the party with the judgment will proceed to execute on it; nor is it "unforseen" that Emerald would use the entirely proper processes of Rule B (which has been a part of the Federal Rules for over 100 years), as it has before, to enforce its rights against a party which (as the U.S. District Court for the District of Delaware has confirmed) egregiously has breached an unquestionably maritime contract, causing Emerald multiple millions of dollars in damages.

Further, there is no "urgent" need for assistance or relief; any garnishee answer is due November 16th - four (4) days after the presently-scheduled November 12th Fed. R. Civ. P. E hearing that this Court has set. As pointed out earlier, as well, any party needing an extension to respond need only contact Emerald's counsel ( whose name and contact information is prominently a part of the garnishment writs served).

[2]   "Attachment is not merely a pretrial remedy . . . but is also a remedy that may be used to enforce a judgment. Supplemental Rule B of the Admiralty and Maritime Rules and Fed. R. Civ. P. 64 permit the use of state law remedies . . . specifying a federal court judgment as a basis for securing an attachment." *Astrea United Invest., L.P. v. Onitiri*, 1992 U.S. Dist. LEXIS 17586, at 8 (S.D.N.Y. 1992).

Sea Star's motion as any sort of "emergency" and thwart properly-issued Rule B maritime attachment and garnishment writs to impose the equivalent of a gag order. The judgment against Sea Star is no secret; besides being on the public record, it has been reported in the maritime trade press; the publication Tradewinds (http://www.tradewinds.no), for example, on October 30th (2009) reported as follows (headline, "Saltchuk facing ship-arrest threat"):

> A Seattle-based player is fighting the looming seizure of an out-of-service vessel tied up in Baltimore.
>
> A leading shipowning group in the US-flag domestic trades is facing the arrest of one of its vessels after losing a five-year courtroom battle.
>
> Seattle's Saltchuk Group and its Puerto Rico-specialist subsidiary, Sea Star Line, are still fighting the arrest at Baltimore of the 1,200-teu, 5,330-lane-metre conro El Faro (ex- Northern Lights , built 1974, rebuilt 1992 and 2006) on jurisdictional grounds.
>
> But Sea Star's longtime adversary, Emerald Equipment Leasing Inc, has a powerful card in its hand in the form of a $6.13m final judgment awarded in late September in a Delaware federal court.
>
> The El Faro has been out of service in Baltimore for an unknown period and is perhaps considered laid up. Service schedules on Sea Star's website list only the sailings of the company's other two conros plus sailings of three containerships belonging to competitor Horizon Lines.
>
> But besides asking for the arrest of the ship, Emerald's lawyers are targeting some 40 garnishee defendants - customers and suppliers of Sea Star who could be ordered to turn over remittances to satisfy the judgment.
>
> Sea Star chairman Bob Magee could not be reached for comment before TradeWinds went to press.
>
> In the lawsuit under the US "Rule B" maritime-attachment procedure, Sea Star is fighting back on the grounds of a US Second Circuit appellate ruling in the case known as "Aqua Stoli", a ruling that implies that defendants who have a legal presence in a convenient adjacent jurisdiction are not subject to Rule B attachment - since the purpose of Rule B is to provide a way of getting at the assets of absent parties, not those to whom a court can reach out at will. But that argument may be a difficult one to make in that Baltimore is not in the Second Circuit and thus not

bound by Second Circuit rulings.

As TradeWinds reported at an earlier stage in the litigation, the El Faro dispute is a hangover from the collapse of Navieras de Puerto Rico (NPR) in April 2002, which left the crowded US-Puerto Rico trade with four players: Horizon, Sea Star, Crowley and Trailer Bridge.

Emerald, a successor of the bankrupt NPR, leased NPR's old chassis, generator sets and containers to Sea Star and agreed to collect hire on the basis of "self-billing reports". In October 2003, Emerald determined that the reports were "grossly understated" and terminated the leases. The companies sued each other the next year. After five years of litigation, a Delaware federal district court found against Sea Star on 24 September this year and entered a $6.13m judgment covering $4.75m in hire and stipulated loss values of the equipment plus a whopping $1.32m in lawyer bills in addition to other costs.

The litigation was hard fought and in August, the Delaware court assessed Sea Star's lawyer, Timothy Armstrong, a $15,000 sanction payable to Emerald for not following a court order to provide information about its top customers and the equipment used in servicing them.

Despite the advanced age of the ship targeted for arrest, the El Faro is by no means ready for the boneyard. Sea Star spent an estimated $10m to $11m converting and rejuvenating it just three years ago. The prohibitive cost of newbuilding in the US Jones Act trade encourages owners to refurbish and refit old tonnage. The El Faro, which formerly sailed for sister company Totem Ocean Trailer Express (Tote), was elaborately converted at Atlantic Marine's Alabama Shipyard after a sale within Saltchuk Group.

Besides increased capacity for boxes and rolling cargo, the vessel was prepared for the Puerto Rico-US East Coast trade by the addition of tanks for rum and fructose.

There is no "emergency." Any garnishee answer would be due on November 16th, after the November 12th Supplemental Rule E hearing that this Court has set. No garnishee has asked for an extension, and any garnishee needing one - as in any case - can, as Emerald counsel pointed out this morning to Sea Star counsel, request one, just as in any civil litigation. Sea Star has no right for its "embarrassment" at having a $6+ million dollar judgment entered against it - a United States District Court having found as a matter of public record after long and public litigation -

that Sea Star egregiously breached its contract with Emerald - to have any relief much less supposed "emergency" relief demanding immediate attention to a matter which this Court already addressed in the November 2nd conference before the Court. This Court now should deny Sea Star's motion.

Dated: November 3, 2009.

          Respectfully Submitted,

          /s/ J. Stephen Simms
          J. Stephen Simms (#4269)
          John T. Ward
          Simms Showers LLP
          20 S. Charles Street, Suite 702
          Baltimore, Maryland 21201
          Phone: (410) 783-5795
          Fax: (410) 510-1789

          Emerald Equipment Leasing Counsel

## CERTIFICATE OF SERVICE

I certify that on November 3, 2009 I caused the foregoing to be filed on the Court's CM/ECF system for service on all record counsel.

          /s/ J. Stephen Simms